UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JASON CLINARD, | ) |
| --- | --- |
| Petitioner, | ) |
| | ) No. 3:13-cv-01190 |
| v. | ) |
| | ) |
| BERT C. BOYD, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

On February 27, 2018, the Sixth Circuit reversed the denial of Jason Clinard's federal habeas petition and found that he was entitled to a new de novo transfer hearing "[b]ecause there is a reasonable probability that Clinard would not have been transferred to adult court absent his counsel's ineffective assistance." Clinard v. Lee, 722 F. App'x 552, 566 (6th Cir. 2018), cert. denied, 139 S. Ct. 123 (2018).

By Order entered on October 15, 2018, the Court referred this case to the Magistrate Judge to hold the de novo juvenile transfer hearing. (Doc. No. 56). The Magistrate Judge conducted the hearing on April 8-9, 2019. (Doc. No. 82). On January 28, 2020, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that, based on the evidence at the time of the August 2, 2005 transfer hearing, the state court should transfer Clinard to be dealt with as an adult in the criminal court of competent jurisdiction. (Doc. No. 88).

Pending before the Court are Clinard's timely Objections to the R&R. (Doc. No. 91), to which the Respondent has responded. (Doc. No. 94). The standard of review that is applied by the district court depends on the nature of the matter considered by the Magistrate Judge. See Baker v. Peterson, 67 F. App'x, 308, 310 (6th Cir. 2003) (citations omitted). Because here the R&R is

1

"dispositive," the Court is required to make a de novo determination of the portions of the Magistrate Judge's recommendations to which objections have been made. United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001) (differentiating "nondispositive, preliminary measures of § 636(b)(1)(A)" from "dispositive motions" excepted from § 636(b)(1)(A)). Under a de novo review, the Court evaluates the evidence without granting any deference to the Magistrate Judge's findings and conclusions. Mathews v. Weber, 423 U.S. 261, 270-71 (1976); United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985) ("When reviewing evidence adduced at a hearing before a magistrate, a district court must weigh the evidence for itself and make an independent determination of the dispositive issues."); Kirk v. Corr. Corp. of Am., No. 1:16-cv-00031, 2017 WL 3172738, at *4 (M.D. Tenn. July 26, 2017). The District Judge may accept, reject, or modify recommended decisions, receive further evidence, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1)(C).

In addition to R&R, also pending before the Court is Clinard's Motion to Dismiss Petition to Transfer (motion to dismiss). (Doc. No. 104). Respondent's Response (Doc. No. 102) and Clinard's Reply (Doc. No. 103). After the referral to the Magistrate Judge and prior to the de novo transfer hearing, the Magistrate Judge determined that the motion to dismiss "is for the district judge." (Doc. No. 71, Text Order). When addressing "important evidentiary and motion issues" on the day of the de novo hearing, the Magistrate Judge acknowledged and again declined to address Clinard's motion to dismiss, stating that the District Judge "referred to [the Magistrate Judge] the decision of whether there should have been a referral to adult court or not, and [] the issue of whether it would be constitutional or not wasn't referred to [the Magistrate Judge]." (Doc. No. 83 at PageID# 5326). Consequently, during the transfer hearing, the Magistrate Judge did not consider any evidence or hear any argument in support of, or in opposition to, the motion to

2

dismiss.[1] Neither party was given an opportunity to make an offer of proof regarding evidence the party would have attempted to admit pertaining to the motion to dismiss if permitted.

The parties agree that the version of Tennessee Code Annotated § 37-1-134 in effect on August 2, 2005, governs this action. (Doc. No. 65 at PageID# 4682; Doc. No. 69 at PageID# 5224). In 2005, there were no Tennessee rules preventing a juvenile who is facing transfer to adult court from filing a pretrial motion to dismiss the transfer in which he or she raises a federal constitutional claim. And there *was* precedent establishing that a juvenile who faces a transfer hearing is entitled to assert his or her constitutional rights during the juvenile proceedings, even if those rights might be waived after transfer.[2] See State v. Womack, 591 S.W.2d 437, 443 (Tenn. Ct. App. 1979). As the Tennessee Court of Appeals explained,

> [t]he right of the juvenile to a full and fair hearing before the juvenile judge is virtually identical to the right of an adult to a full and fair preliminary hearing before a General Sessions Judge. There is no reason in justice and fairness that a juvenile

---

[1] Clinard raised a constitutional argument again in his brief filed after the transfer hearing. (Doc. No. 86 at PageID# 5729-32). In the R&R, the Magistrate Judge found that "[t]his argument is better suited for Petitioner's constitutional argument that is not before the Magistrate Judge." (Doc. No. 88 at PageID# 5760).

[2] This opportunity remains today. See Nelson v. State, No. E2017-01418-CCA-R3-PC, 2018 WL 6721986, at *15 (Tenn. Crim. App. Dec. 21, 2018) (during post-conviction hearing, attorney for adult petitioner testified that he had not discussed "any potential constitutional challenges to the gang enhancement statute" prior to petitioner's suppression hearing and petitioner pleading guilty); State v. Turner, No. E2016-00651-CCA-R3-CD, 2017 WL 1830106, at *12 (Tenn. Crim. App. May 5, 2017) (when, on direct appeal, the state asserted that defendant had waived a challenge to the constitutionality of the Gang Enhancement Statute, Tenn. Code Ann. § 40-35-121 (2014), "by failing to raise it in a pretrial motion", the state appellate court noted that "[t]here is conflicting authority regarding a challenge to a statute's constitutionality is waived for failure to raise it pretrial."). See also United States v. Under Seal, 819 F.3d 715, 728 (4th Cir. 2016) (on interlocutory appeal, affirming district court's denial of government's motion to transfer juvenile offender to adult court where district court had concluded that the prosecution would be unconstitutional under Miller and Roper; finding that, if juvenile was convicted in adult court, "the sentencing court could not constitutionally impose the only two authorized penalties for that offense" and therefore "such a prosecution cannot constitutionally proceed."); State v. Null, 836 N.W.3d 41, 52-53 (Iowa Aug. 16, 2013) (recounting that, by the 1960's in America, "it became apparent that the purpose of juvenile court proceedings was no longer primarily to protect the best interest of the child and was instead becoming more punitive in nature" which led to decisions by the United States Supreme Court to require "that many of the protections afforded adult offenders in the criminal process also applied in juvenile courts."); Mooney v. Allbaugh, No. 15-CV-0197-TCK-PJC, 2018 U.S. Dist. LEXIS 172244, at *18 (N.D. Okla. Oct. 5, 2018) (before a state magistrate deciding transfer, juvenile litigated a pretrial motion to dismiss raising an Eighth Amendment cruel and unusual punishment claim, including a claim specifically under Miller); Shobha L. Mahadev, Youth Matters: Roper, Graham, J.D.B., Miller, and The New Juvenile Jurisprudence, CHAMPION Mar. 2014 at 14, 16 ("Even in juvenile court, defense attorneys can argue that mandatory sentences violate the spirit, if not the letter, of Miller, Graham, and Roper.").

> should be deprived of his rights in Juvenile Court simply because he might later assert those rights in a later hearing before another court. If the juvenile is not to receive a full and fair hearing with due process in Juvenile Court, and must wait transfer to the Criminal Court to have the benefits of his constitutional rights, then the juvenile hearing is a waste of time and energy and should be abolished.

Id. at 443. In so stating, the state appellate court cited In Re Gault, 387 U.S. 1 (1967), in which the United States Supreme Court held that there is no difference between the constitutional rights of juvenile citizens and those of adult citizens and reversed a juvenile commitment for lack of due process, and Kent v. United States, 383 U.S. 541 (1966), which involved a transfer order from juvenile court. 591 S.W.2d at 443. Later, the Tennessee Court of Appeals plainly stated, "Transfer hearings involve fundamental rights of sufficient gravity to implicate constitutional concerns." State v. James, No. 01-A-01-9508-JV00339, 1995 WL 468433, *2 (Tenn. Ct. App. Aug. 9, 1995) ("Transfer proceedings have been likened to preliminary hearings."). See Fuller v. State, No. E2004-02276-CCA-R3-PC, 2005 WL 2922371, at *9 (Tenn. Crim. App. Nov. 4, 2005) (noting that, during adult Fuller's post-conviction hearing, trial counsel testified that he discerned "no constitutional or statutory challenges that could have been pursued" during Fuller's preliminary hearing). Indeed, Clinard previously filed pretrial motions in Juvenile Court to protect his Fifth Amendment rights to due process and against self-incrimination. (Motion to Dismiss, Doc. No. 41, Attach. 19 at PageID# 2530-31; Motion to Suppress, Doc. No. 41, Attach. 19 at PageID# 2500-05; Hr'g Tr.; Transcript of Apr. 2005 Juvenile Transfer Hr'g., Doc. No. 41, Attach. 20 at PageID# 2902-12).

Respondent asserts that, because he cannot find an express provision in the Tennessee rules permitting Clinard's motion to dismiss, the motion must not be cognizable. (Doc. No. 102 at PageID# 5868) (arguing that "nothing in the Rules authorizes a juvenile court to seek dismissal of a petition to transfer due to the claimed unconstitutionality of a potential sentence."). However,

4

the Tennessee Rules of Juvenile Practice and Procedure permit the filing of written motions for relief. See Tenn. R. Juv. P. 101(b). And one of the stated purposes of the Tennessee juvenile justice system is to "[p]rovide a simple judicial procedure through which this part is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." Tenn. Code Ann. § 37-1-101(a)(4).[3] As the Court has explained, juveniles in Tennessee are to be afforded the same rights as adults in a preliminary hearing. Mounting a constitutional challenge by way of a written motion, such as Clinard does here, would be an appropriate action were Clinard an adult defendant in a preliminary hearing. Moreover, because there is conflicting authority regarding whether an adult criminal defendant's challenge to a Tennessee statute's constitutionality is waived for failure to raise it pretrial, State v. Turner, 2017 WL 1830106, at *12, Clinard should raise his constitutional challenges here to avoid possible waiver of the challenge.

Additionally, Respondent asserts that, on remand, Clinard improperly seeks to "revive" his Eighth Amendment claim by filing the instant Motion to Dismiss Petition to Transfer. (Doc. No. 102 at PageID# 5865). For purposes of ruling on the pending Motion, however, the Court proceeds having decided that, in conducting a de novo transfer hearing as though it is a Tennessee juvenile court in August 2005, the Court must turn a blind eye to the previous habeas proceeding responsible for getting Clinard here in the first place. Thus, there is no "revival." The Court acknowledges that this legal fiction creates the unusual result of the Court presently entertaining Clinard's Eighth Amendment challenge to his transfer to adult court even though Clinard may have conceded in his prior federal habeas proceeding that his Eighth Amendment claims were

---

[3] Of the six purposes stated in 2005, all six remain in Tennessee's 2021 scheme. Effective July 1, 2018, an additional purpose was stated: to "[p]rovide developmentally appropriate interventions based on current scientific research in related fields, including neuroscience, psychology, sociology, and criminology." Tenn. Code. Ann. § 31-1-101(a)(7) (2018).

5

untimely and therefore waived. (See Doc. No. 44 at PageID# 4572). But the Court cannot provide Clinard with a de novo transfer hearing if it conducts the hearing with knowledge of what would transpire later in Clinard's federal habeas proceedings. In other words, if this Court is to proceed as though Clinard has not yet been transferred to adult court, he has not yet been convicted and sentenced, and he has not yet served over 15 years in prison, during which time he commenced federal habeas proceedings. Accordingly, this Court, sitting as a Tennessee juvenile court in 2005, will afford Clinard "a full and fair hearing" on the matter of whether he should be transferred to adult court and will entertain all constitutional arguments raised by Clinard in doing so.

Upon consideration of the R&R and a thorough review of the record, the Court finds that the decisions of whether to grant Clinard's motion to dismiss and whether to transfer Clinard to adult court after the de novo juvenile transfer hearing ordered by the Sixth Circuit are inextricably intertwined. Because the Magistrate Judge did not entertain evidence and/or argument in support of, or in opposition to, the motion to dismiss during the transfer hearing or address the motion to dismiss in any way in the R&R, the R&R is **VACATED;** this case is **REMANDED AND RECOMMITTED** to the Magistrate Judge as follows.

The Magistrate Judge shall (1) conduct a new transfer hearing and (2) prepare a R&R as to (a) whether Clinard's motion to dismiss should be granted or denied and (b) whether Clinard should be transferred to adult court after a de novo transfer hearing. The parties may wish to offer additional evidence or testimony in support of, or in opposition to, Clinard's motion to dismiss. A new transfer hearing is needed because such evidence, and/or any written or oral argument pertaining to such evidence, was not permitted during the April 2019 hearing.

Further, because of the highly persuasive nature of the Tennessee Supreme Court's forthcoming decision in State v. Booker, No. E2018-01439-CCA-R3-CD, 2020 WL 1697367

6

Case 3:13-cv-01190   Document 111   Filed 09/22/21   Page 6 of 7 PageID #: 5940

(Tenn. Crim. App. Apr. 8, 2020) perm. app. granted (Sept. 16, 2020), regarding one of the key issues raised by Clinard in the motion to dismiss, the Magistrate Judge shall reserve consideration of the motion to dismiss until after the Booker decision is announced.

The Clerk is **DIRECTED** to administratively close this case. Within five (5) days of issuance of the Booker decision, the parties shall notify the Court and request that this case be reopened, which the Court will allow. At that time, the Magistrate Judge may elect to receive supplemental briefing on the effect of the Booker decision on the arguments raised in Clinard's motion to dismiss, which will be revived upon reopening of this case.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE